**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PACIFIC COAST BUILDING PRODUCTS, INC.,

      Plaintiff,

    v.

AIU INSURANCE COMPANY,

      Defendant.
_____/

No. C 05-4976 PJH

**ORDER GRANTING AND DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The parties' cross-motions for summary judgment came on for hearing on October 11, 2006 before this court. Plaintiff Pacific Coast Building Products, Inc. ("Pacific Coast") appeared through its counsel, Richard Shively and Philip L. Pillsbury. Defendant AIU Insurance Company ("AIU") appeared through its counsel, Kevin G. McCurdy. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS AIU's motion for summary judgment and DENIES Pacific Coast's motion for summary judgment, for the reasons stated at the hearing, and as follows.

**BACKGROUND**

This action stems from an insurance dispute. Pacific Coast manufactures, distributes, and installs building products and materials. See Second Amended Complaint for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing ("Complaint"), ¶ 6. As a result of its business, Pacific Coast is and has been frequently named as a defendant in construction defect actions brought by individuals alleging bodily injury or property damage as a result of Pacific Coast's work or products. Id. Many such claims include allegations of continuous and progressive injury, or damages that extend over multiple policy periods. Complaint, ¶ 6.

At issue in this action are certain underlying claims for bodily injury and/or property

damage that triggered coverage for multiple policy years – specifically, for the seventeen policy periods ranging from 1989-90 through 2005-06, including the 1995-1996 policy period. See Complaint, Ex. C. Pacific Coast incurred significant expenditures in connection with its defense of these continuing loss claims.

Generally, in order to defray the defense costs associated with continuing loss claims, Pacific Coast maintained multiple levels of insurance protection designed to provide coverage in the event of such claims. For the 1995-1996 policy period relevant to the underlying claims here, Pacific Coast first maintained a self-insured retention ("SIR") in the amount of $300,000.00 per occurrence, up to an aggregate limit of $2.4 million. See Complaint, ¶ 5. Sitting directly on top of the SIR was a first level excess insurance policy provided by National Union Fire Insurance Company ("National Union"). See id. The National Union policy had policy limits of $1 million per occurrence, up to an aggregate limit of $2 million. Id. Finally, sitting directly on top of the National Union policy, was a second level excess policy issued by defendant AIU Insurance Co. ("AIU"). Id. The AIU policy had limits of $15 million per occurrence, and in the aggregate. Id.[1]

Normally, the policies that sit on the same level as the National Union policy – and which Pacific Coast refers to as "first level excess" policies – would be referred to as "primary" policies, and the policies that sit on the same level as the AIU policy – and which Pacific Coast refers to as "second level excess" policies – would simply be referred to as "excess" policies. Pacific Coast itself originally used this primary v. excess characterization in its original and first amended complaint. See, e.g., First Amended Complaint, ¶ 5. Pacific Coast's current characterization of the policies, however, eliminates this earlier characterization and resorts to the first level excess and second level excess characterizations noted above. Although AIU takes issue with this new characterization, and refers to the now first level excess policies as primary policies, in point of fact, it is

---

[1] Pacific Coast also maintained two higher level excess policies sitting directly above the AIU policy. See Complaint, ¶ 5. However, these policies are not directly relevant to the court's analysis here.

2

irrelevant whether those policies are referred to as either "first level excess", or "primary." For as explained below, the salient issue is whether the policies – whether excess or primary – qualify as "underlying insurance" to the AIU policy.

At any rate, Pacific Coast sought coverage for its losses on the continuing loss claims at issue under the policies in effect for 1995-1996. In November 2000, Pacific Coast exhausted the $2.4 million aggregate SIR applicable to the policy period. See Complaint, ¶ 8. Once it had done so, Pacific Coast requested that National Union assume defense and indemnity obligations under the terms of its first level excess insurance policy, which National Union eventually did. See id. The aggregate $2 million limit applicable to the National Union policy was exhausted on or about October 28, 2002. Once those limits were exhausted, Pacific Coast then notified AIU that all other applicable scheduled underlying liability insurance had been exhausted, and requested that AIU assume defense and indemnity obligations with respect to all claims assigned to the 1995-96 policy period, and which National Union had been defending. Id. at ¶ 9.

AIU rejected Pacific Coast's tender of indemnity and defense on the ground that AIU was not required to assume responsibility for any claims until Pacific Coast had first exhausted all underlying insurance in all other policy years to which the claims assigned to the 1995-96 policy period could have been assigned. Id.

B. The AIU Policy

The AIU policy has the following relevant provisions:

   I.   Coverage

AIU will "pay on behalf of the Insured those sums in excess of the Retained Limit that Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence happening anywhere in the world. The amount [AIU] will pay for damages is limited as described in ... [the] Limits of Insurance."
See Willson Decl., Ex. A ("AIU Policy"), at section I.

* * *

   II.  Defense

3

AIU "shall have the right and duty to defend any claim or suit seeking damages covered by the terms and conditions of this policy when: ... The applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other underlying insurance providing coverage to the Insured have been exhausted by payment of claims to which this policy applies...."
See id. at section II.

\* \* \*

III.   Limits of Insurance

Subsection D: "If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the Insured are reduced or exhausted by payment of one or more claims that would be insured by [AIU's] policy," then in the event "of exhaustion of the underlying limits of insurance," the AIU policy will "continue in force as underlying insurance." See AIU policy at section III, D.

Subsection E: AIU will "be liable only for that portion of damages in excess of the Insured's Retained Limit which is defined as the greater of either: ... the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the Insured....". See id. at section III, E.

\* \* \*

VI.   Conditions

Section J: "If other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy." See id. at section VI, J.

C.   The Instant Action

Pacific Coast filed the instant action against AIU in state court on November 3, 2005, alleging two causes of action for (1) breach of an insurance contract, and (2) breach of the implied covenant of good faith and fair dealing. On December 1, 2005, AIU removed the case to federal court. See generally Notice of Removal. Since then, Pacific Coast has filed two amended complaints. The operative complaint is the Second Amended Complaint filed on March 17, 2006. See Complaint.

The Second Amended Complaint alleges three causes of action against AIU: (1) breach of an insurance contract for failure to indemnify; (2) breach of an insurance contract

4

for failure to defend; and (3) breach of the implied covenant of good faith and fair dealing. On April 6, 2006, AIU filed its answer to the Second Amended Complaint, in which it asserts 28 affirmative defenses. See Answer to Second Amended Complaint ("Answer"), pp. 4-7.  AIU's tenth, twenty-first, and twenty-third affirmative defenses all assert that Pacific Coast's claims are barred to the extent that other underlying insurance is available that has not yet been exhausted. Id.

The parties have filed cross-motions for summary judgment. AIU seeks partial summary judgment as to the first and second causes of action asserted in Pacific Coast's Second Amended Complaint.  Pacific Coast seeks partial summary judgment on AIU's tenth, twenty-first, and twenty-third affirmative defenses.[2]

**DISCUSSION**

A.  Legal Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c).  Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.  The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.  Horizontal Exhaustion

Although the parties have filed cross-motions for summary judgment, the parties'

---

[2] AIU has also concurrently filed: (1) a request for judicial notice of the operative second amended complaint; and (2) objections to the original and supplemental declarations of Rick Willson in support of Pacific Coast's motion for summary judgment, and its opposition to AIU's motion.  The court hereby: (1) GRANTS AIU's request for judicial notice; and (2) OVERRULES AIU's objections.

1 motions raise the same issue.  That issue is straightforward:  whether AIU has an
2 affirmative obligation under the terms of its policy to provide coverage for the underlying
3 continuous loss claims, even though other insurance policies in effect for other triggering
4 policy periods are not exhausted.  The court's resolution of this issue in turn depends on
5 whether the "horizontal exhaustion" rule – which states that the policy limits of all underlying
6 primary policies must be exhausted before coverage attaches under an excess or umbrella
7 policy – applies.  See, e.g., Cmty. Redevelopment Agency of City of Los Angeles v. Aetna
8 Cas. & Sur. Co., 50 Cal. App. 4th 329, 339 (1996).

9       Preliminarily, the parties do not dispute the following:  that the continuing loss period
10 in effect for the underlying claims spanned from 1989 through 2006, and that for each
11 successive year in this span, insurance policies were in effect for at least three different
12 levels of coverage: (1) first layer SIRs, under which Pacific Coast was self-insured for the
13 first layer of losses in each year; (2) first level liability insurance policies, which sat directly
14 on top of the SIRs; and (3) additional excess levels of insurance policies, which sat directly
15 on top of the first level liability policies.  The parties also do not dispute that AIU provided
16 an excess commercial umbrella policy for the policy period 95-96, which was within the
17 above continuing loss period; that the AIU policy sat directly above the National Union
18 policy, which in turn sat directly above Pacific Coast's SIR for the 95-96 policy year; and
19 that the National Union policy was exhausted by the time Pacific Coast tendered its claims
20 for defense and indemnity to AIU.  See generally Ruettgers Declaration ("Reuttgers Decl.");
21 Willson Declaration ("Willson Decl.").

22       In determining whether the horizontal exhaustion rule applies to the above facts, the
23 court begins first with the express language of the AIU policy.  See, e.g., Cmty.
24 Redevelopment, 50 Cal. App. 4th 329, 338-39 (noting that the "clear and explicit" meaning
25 of insurance provisions, as interpreted in their "ordinary and popular sense," normally
26 controls judicial interpretation of the policy); see also MacKinnon v. Truck Ins. Exch., 31
27 Cal. 4th 635, 647 (2003).  There is no dispute as to the actual provisions contained within
28

6

the AIU policy.  The AIU policy's affirmative coverage provision states that AIU will "pay ... those sums in excess of the Retained Limit..." that results from qualifying property damage and injury.  See Willson Decl., Ex. A ("AIU Policy"), at section I. The AIU policy also provides an affirmative defense obligation when "the underlying policies listed in the Schedule of Underlying Insurance ... and ... any other underlying insurance providing coverage" to Pacific Coast have been exhausted.  See id. at section II.

These terms of coverage are modified, however, by the applicable Limits of Insurance enumerated in the policy.  One such modification, which may be referred to as the "drop down" provision, provides that, if the limits of insurance of policies "listed in the Schedule of Underlying Insurance or of other insurance providing coverage to AIU" are reduced or exhausted, then in the event of exhaustion of the underlying limits of insurance specifically, the AIU policy will "continue in force as underlying insurance."   See AIU policy at section III, D.  A second provision – the "retained limit" provision – states that AIU will "only be liable for that portion of damages in excess of" the retained limit, which is defined in part as the total applicable limits "of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other underlying insurance providing coverage to the Insured".  See id. at section III, E.  Finally, the AIU policy also contains a series of conditions, which includes an "other insurance" provision, which states that "[i]f other valid and collectible insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance...".  See id. at section VI, J.

These AIU policy provisions are virtually identical to the provisions construed in Community Redevelopment Agency v. Aetna Cas. & Surety Co., the landmark California state court decision dealing with the issue of horizontal exhaustion.  See 50 Cal. App. 4th 329 (1996).  In Community Redevelopment, the court considered a similar continuing loss scenario to that at play here, and specifically considered whether an excess insurance carrier – whose policy was assigned to one policy year within the continuing loss period – was required to pay the insured upon exhaustion of the underlying primary policy for the

7

same year, even though there were other primary policies existing for the remaining years within the continuing loss period. As here, the excess policy in Community Redevelopment contained: (1) a "retained limit" provision promising to provide coverage in excess of the limits of both scheduled underlying insurance and "any other underlying insurance collectible by the [i]nsured"; (2) a "drop down" provision nearly identical to the one contained in the AIU policy; and (3) an "other insurance" provision nearly identical in language to the analogous provision contained in the AIU policy. See 50 Cal. App. 4th at 335.

The Community Redevelopment court found these provisions to be "unambiguous", and held that the excess insurer was *not* responsible to the insured. The court expressly stated, in a rule that has since been adopted by the Ninth Circuit, that "*all* primary insurance must be exhausted before a secondary insurer will have exposure" in a continuous loss case. See 50 Cal. App. 4th 329; see also Employers Ins. of Wasau v. Granite State Ins. Co., 330 F.3d 1214 (9th Cir. 2003)("liability under a secondary [excess] policy will not attach until all primary insurance is exhausted..."). Noting the importance of the policy language, the court in Community Redevelopment further held that "absent a provision in the excess policy *specifically describing* and *limiting* the underlying insurance, a horizontal exhaustion rule should be applied in continuous loss cases...". Id.

Community Redevelopment is seemingly dispositive. As AIU argues and as shown above, there is no meaningful distinction between the policy language at issue in Community Redevelopment, and that of the AIU policy here. Nor is there any dispute that this is a continuous loss case, that the AIU policy is a second level excess policy sitting above a first level policy, and that other unexhausted levels of insurance exist for other qualifying policy periods, including other first level policies sitting below second level excess policies.

Accordingly, unless Pacific Coast can offer some argument that distinguishes the present policy or scenario from that described in Community Redevelopment, the horizontal

exhaustion rule will apply here, as in that case.

### C. Defenses to Horizontal Exhaustion

Pacific Coast's attempt to establish that neither Community Redevelopment nor horizontal exhaustion apply can be categorized into three general arguments: (1) that the AIU policy provisions are distinguishable from, or contain language that obviates, Community Redevelopment's horizontal exhaustion requirement; (2) that under separate California law, Pacific Coast is entitled to select the 1995-96 policy period in which to seek defense and indemnity from all carriers providing coverage for that year, including AIU; and (3) that the existence of Pacific Coast's SIRs distinguish this case from Community Redevelopment. For the reasons explained briefly below, Pacific Coast's arguments fail.

#### a. AIU policy provisions

Recognizing that the express language of an insurance policy is the touchstone for policy interpretation, Pacific Coast points to several aspects of the AIU policy that it asserts distinguish that policy from both the policy and result described in Community Redevelopment.

First, Pacific Coast argues that, under the AIU policy's "drop down" provision, the AIU policy became "underlying insurance" as soon as the National Union policy – listed in the Schedule of Underlying Insurance – was exhausted, thereby transforming the AIU policy from a second level excess policy into the same "underlying coverage" as that represented by the first level excess policies in other continuing loss years. Pacific Coast asserts that, as a result, horizontal exhaustion cannot apply, since it is premised on the notion that lower level policies must be exhausted prior to higher level policies, and would not therefore apply to policies providing the same level of coverage.

Pacific Coast's argument ignores the AIU policy's affirmative coverage provisions. Those provisions legally obligate AIU to pay only "those sums in excess of the Retained Limit...". And that limit, which is defined in the policy's "retained limit" provision, expressly states that coverage will be triggered under the policy only for those damages in excess of

9

*both* the limits of any scheduled underlying insurance (i.e., National Union policy) *and* the applicable limits of "any other underlying insurance providing coverage" to Pacific Coast. See AIU Policy, at section III, E.  Thus, coverage under the AIU policy first requires exhaustion of not only the National Union policy, but all underlying insurance, as well.  The drop down provision, far from allowing coverage to be triggered upon exhaustion of the underlying scheduled insurance only – as Pacific Coast contends – merely acts as a corollary limit on the affirmative coverage provisions of the policy in representing that, *once coverage is triggered*, then the AIU policy will "drop down" to assume the obligations of coverage as an underlying insurer.  Again, however, coverage is not triggered unless all underlying insurance has been exhausted, and until all underlying insurance is exhausted, the drop down provision has no application.

Second, Pacific Coast argues that, under the "other insurance" provision contained in the AIU policy, in order for horizontal exhaustion to apply, all underlying insurance policies must be "valid and collectible" in the sense that they are actually payable or available to Pacific Coast.  And since no benefits under the underlying first level excess policies would be payable until the SIRs are first exhausted, those policies are not truly "collectible."

This argument is misplaced.  The "other insurance" provision cannot be construed to mean that the underlying first level excess insurance policies must actually be payable before AIU can rely on the exhaustion rule.  This is because a similar interpretation was rejected in Wells Fargo Bank v. Cal. Ins. Guarantee Assoc., 38 Cal. App. 4th 936, 950 (holding it was neither "prudent or necessary" to construe other insurance provision as meaning that excess insurer was "liable for the excess of the limits of the *collectible* underlying insurance").  Moreover, "other insurance" provisions truly only become relevant where several insurers insure the same risk at the same level of coverage.  See, e.g., Dart Indus., Inc. v. Commercial Union Ins. Co., 28 Cal. 4th 1059, 1079 (2002).  Here, while there exist several insurance policies on the same continuous loss risk, the actual issue before

10

the court relates to whether exhaustion of lower level policies are required prior to coverage under AIU's higher level policy. Accordingly, the "other insurance" provision is of limited relevance in this particular situation.[3]

Accordingly, Pacific Coast's arguments that go to the language of the AIU policy provisions are to no avail.

      b.  selection of single policy period

Pacific Coast also asserts that, under the case law set forth in both FMC Corp. v. Plaisted & Cos. and Armstrong World Indus., Inc. v. Aetna Cas. & Surety Co., it is expressly entitled to choose, from among all policy periods covered by the continuing loss period, the single period in which the greatest amount of coverage is available, and to apply *all* insurance coverages in effect for this period – including excess policies. See 61 Cal. App. 4th 1132 (1998) and 45 Cal. App. 4th 1 (1996), respectively. Pacific Coast contends that, in view of this case law, Community Redevelopment is simply inapplicable.

This argument is misguided. As AIU points out, FMC Corp. and Armstrong World Indus. are inapposite to the case at bar. It is true that the cases both dealt with continuous loss scenarios, and that the cases stand for the proposition that once coverage has attached under a policy period that covers an underlying continuous loss claim, that coverage "will extend to all of the insured's liability for damages attributable to the same occurrence in and after the policy period." See, e.g., 61 Cal. App. 4th at 1184; see also 45 Cal. App. 4th at 49-50 (affirming principle that where multiple policies cover an occurrence spanning continuing period, policy holder is entitled to select the policy period to cover the occurrence). However, both cases also construed policy language that is different from the

---

[3] Pacific Coast also makes the related argument that, even as construed under the retained limit provision of the AIU policy, the underlying first level excess policies do not qualify as underlying coverage to the AIU policy, since they are not actually "providing coverage to the insured." See AIU Policy, section III, E. This argument, too, is unpersuasive. As AIU argues, the phrase "providing coverage" should be interpreted as requiring only that any claims fall within the scope of any underlying insurance policies. See Wells Fargo Bank, 38 Cal. App. 4th at 948-49. Here, the parties do not dispute that the underlying continuous loss claims fall within the scope of the first level excess policies. As such, the first level excess policies qualify as underlying insurance policies that would require exhaustion under the policy.

11

AIU policy. Specifically, both cases construed affirmative coverage provisions in which the insurers promised to pay "all sums which the insured shall become legally obligated to pay as damages...." See Armstrong World Indus., 45 Cal. App. 4th at 48-49; FMC Corp., 61 Cal. App. 4th at 1142, 1182. This language is different from that contained in the AIU policy's affirmative coverage provisions, which specifically limits AIU to payment of only "those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay...".

The difference is significant. As explained previously, the AIU policy language, by virtue of its incorporation of the retained limit provision, specifically makes coverage under the policy contingent upon the exhaustion of *all* underlying insurance policies. See AIU Policy, sections I and III, E. In other words, no coverage will exist under the AIU policy, until all underlying insurance is exhausted. This conclusion is supported by the Community Redevelopment holding, which construed identical language in the AIU policy, and is therefore more directly on point here. Here, it is undisputed that first level excess policies exist for other policy periods that cover the underlying continuing losses, and that the AIU policy is a second level excess policy sitting over a first level excess policy. There is, accordingly, underlying insurance to the AIU policy that has not been exhausted.

As such, while it may be true that Pacific Coast is entitled to select the policy period in which to pursue indemnification of the entire continuing loss (up to those policy limits), it is simply not true that this entitles Pacific Coast to seek indemnification pursuant to policies under which no coverage can yet exist, since exhaustion has not occurred.

For these reasons, Pacific Coast's reliance on FMC Corp. and Armstrong World Indus. is not enough to save this case from the outcome compelled by Community Redevelopment.

          c.      SIRs

Finally, Pacific Coast argues that the existence of SIRs in the policy periods that cover the continuing loss period here distinguish the case from Community Redevelopment

and compel a different result. Specifically, Pacific Coast asserts that SIRs cannot be likened unto primary policies, or other true first-dollar primary coverage, such that horizontal exhaustion applies.

Pacific Coast bases its argument in part on the holding of <u>Montgomery Ward v. Imperial Casualty & Indemn. Co.</u>, 81 Cal. App. 4th 356 (2000) and its progeny. Those cases, which also dealt with continuous loss scenarios, stand for the proposition that SIRs do not constitute primary insurance such that horizontal exhaustion applies in situations where the insured maintains SIRs as its underlying primary insurance. <u>See, e.g.</u>, 81 Cal. App. 4th at 364, 369; <u>see also Cal. Pac. Homes v. Scottsdale Ins. Co.</u>, 70 Cal. App. 4th 1187, 1194-96 (rejecting argument that stacking and exhaustion of multiple self-insured retentions was required prior to coverage under policies that were excess to the SIRs).

These cases, however, do not directly apply here. This is because the issue, as stated in <u>Montgomery Ward</u>, was whether the insured was required "to exhaust its SIRs on all potentially applicable policies before *any* insurer has *any* duty to indemnify Montgomery Ward for its losses." <u>See</u> 81. Cal. App. 4th 356, 364 (emphasis added). While the court ultimately answered this question in the negative, and further stated that SIRs cannot be treated as primary/underlying insurance to which the rule of horizontal exhaustion applies, the issue here is different. Here, the issue is not whether all SIRs in effect must be exhausted prior to payment by any insurer, or even by AIU. Rather, the issue is whether the *first level* excess policies in the remaining policy years, which underlie *second level* excess policies analogous to the AIU second level excess policy, must be exhausted. Even if true, as Pacific Coast argues, that exhaustion of these first level excess policies would, practically speaking, require exhaustion of the underlying SIRs to those policies, this assumption does not change the fundamental issue before the court – i.e., whether a first level excess policy must be exhausted prior to coverage under a second level excess policy – or the root fact that under the AIU policy language, exhaustion of those underlying first level excess policies is required. Indeed, the very fact that the first level excess carrier

13

sitting below AIU for the 1995-96 policy period – National Union – satisfied its obligations under its policy, *without* first requiring Pacific Coast to exhaust its SIRs for all remaining policy years, is proof that the present case is different from Montgomery Ward and its progeny; only if National Union had required exhaustion of all underlying SIRs in all remaining policy years prior to offering coverage, would the Montgomery Ward issue truly have been present here.

Pacific Coast also makes the related argument that, in addition to the fact that the underlying SIRs cannot constitute primary policies for purposes of horizontal exhaustion, the underlying first level excess policies sitting atop those SIRs also cannot constitute primary policies such that exhaustion applies. This is so, asserts Pacific Coast, because the law treats policies that depend on exhaustion of SIRs as excess policies, which thereby obviates application of the horizontal exhaustion rule. See, e.g., Pac. Employers Ins. Co. v. Domino's Pizza, Inc., 144 F.3d 1270, 1276-77 (9th Cir. 1998).

This argument, too, fails. For as AIU correctly points out, the AIU policy language, in its affirmative coverage provisions, expressly provides that the policy shall apply excess of the retained limit, which is defined as the greater than the total of all applicable limits of the policies listed in the Schedule of Underlying Insurance, and "*any other underlying insurance providing coverage*" to Pacific Coast. See AIU Policy, sections I and III, E. The plain and ordinary meaning of this provision is that the AIU policy will apply in excess of both the National Union policy and all other underlying coverage, regardless whether that underlying coverage is technically deemed as primary, or excess.

In sum, and for all these reasons, the existence of SIRs under the facts of this case simply do not compel departure from application of the horizontal exhaustion rule, as required under Community Redevelopment.

D.     Conclusion

Pacific Coast fails to persuade the court that the AIU policy provisions are distinguishable from, or that the instant circumstances otherwise warrant departure from,

the conclusion reached by the court in <u>Community Redevelopment</u>.  As such, the court finds that application of the horizontal exhaustion principle is compelled.  To that end, the court hereby GRANTS AIU's motion for partial summary judgment as to the first and second causes of action asserted in the Second Amended Complaint, and DENIES Pacific Coast's motion for partial summary judgment on AIU's tenth, twenty-first, and twenty-third affirmative defenses.

The parties are further ORDERED to attend a case management conference, to be held on November 30, 2006, at 2:30 p.m.

**IT IS SO ORDERED.**

Dated: October 31, 2006

PHYLLIS J. HAMILTON
United States District Judge